UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                           :

A&B ALTERNATIVE MARKETING INC.,     :

                                         :

                  Plaintiff,       :    **MEMORANDUM DECISION**

                                         :    **AND ORDER**

             -against-         :

                                         :    20-cv-3022 (BMC)

INTERNATIONAL QUALITY FRUIT INC.,  :
H&A INTERNATIONAL FRUIT CORP.,    :
SHEROZ MAMAYEV, and ALON MAMAN, :

                                         :

                 Defendants.     :
-------------------------------------------------------- X

**COGAN**, District Judge.

       Plaintiff, a licensed produce wholesaler under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.,* brings this action under PACA based on defendants' failure to pay for produce sold and delivered.  Defendants have defaulted and plaintiff's motion for a default judgment is before me.  Subsequent to the filing of the motion, defendants appeared, but instead of seeking to vacate the entry of default, they moved to dismiss the case on the ground that the Court lacks subject matter jurisdiction, arguing that their businesses are not subject to PACA.  That motion is also before me.

       For the reasons set forth below, defendants' motion to dismiss is denied and plaintiff's motion for a default judgment is granted.

## BACKGROUND

       The facts relating to the transactions between the parties are set forth in the complaint and plaintiff's affirmation submitted as part of its motion for default judgment, as demonstrated by invoices annexed to the complaint and sworn testimony from plaintiff's principal.  These documents reflect that plaintiff sold and delivered to International Quality Fruit ("IQF") $26,180

of produce in nine shipments from March 18, 2017 through October 31, 2018.  In addition, the evidence shows that plaintiff sold and delivered to H&A International Fruit ("H&A") $63,071 of produce in nineteen shipments between October 19, 2018 and December 18, 2018.  All of the produce that plaintiff sold and delivered was produce that plaintiff acquired in Pennsylvania for shipment to New York.  Each one of the invoices for these 28 shipments contained the usual PACA notification provision, advising defendants that, pursuant to PACA, they were to hold the goods or the proceeds of their sale in trust for plaintiff pending payment.

One individual defendant, Sheroz Mamayev, is alleged during the relevant period to have been in control of H&A, and the other individual defendant, Alon Maman, is alleged during the relevant period to have been in control of both H&A and IQF.  Each of the corporate defendants is alleged to have purchased in excess of $230,000 in produce annually and to have received 2,000 pounds of produce in any one day.  (The statutory significance of these allegations will be discussed below.)

Despite repeated demands by plaintiff, none of the defendants have made payment for the produce that plaintiff shipped and invoiced.  The closest they have gotten is to provide plaintiff with some checks that have bounced.  They have sold the produce bought from plaintiff and dissipated the proceeds instead of holding them in a PACA trust.

Defendants, as noted above, have defaulted, and even in their motion to dismiss, they do not contest the transactional facts as set forth above.  Instead, their affidavits assert that they do not sell on a wholesale basis, but only to local retail buyers.  This, they assert, exempts them from PACA coverage.  In addition, they contend that because plaintiff is a New York wholesale seller and they are New York wholesale buyers, the interstate commerce requirement for PACA coverage is absent.

## DISCUSSION

### I.    Liability

The five elements that a plaintiff must demonstrate to establish the existence of a PACA

trust to protect its account receivable are as follows:

> First, a plaintiff must have sold defendant perishable agricultural commodities.
> Second, plaintiff must show that the purchaser of the perishable agricultural
> commodities, the defendant, was a "commission merchant, dealer, or broker,"
> pursuant to Section 499(a) of PACA. . . . Third, the transaction must have
> occurred in interstate commerce.  Fourth, the seller of the perishable agricultural
> commodities has not received full payment from defendants on the transaction.
> Finally, the seller must have preserved its interest in the PACA trust by giving
> written notice.

Associated Produce, Inc. v. LaSejita Produce, Inc., No. 19-cv-5894, 2020 WL 2476036, at *4

(E.D.N.Y. Apr. 22, 2020) (colatus), report and recommendation adopted, 2020 WL 2475620

(E.D.N.Y. May 13, 2020).  In the instant case, the facts set forth in plaintiff's submissions satisfy

each of these criteria.

There is no controversy as to the first, fourth and fifth factors.  This case involves

perishable agricultural commodities.  The invoices annexed to the complaint confirm that all of

the products consisted of fruits and vegetables, and, indeed, the nature of both plaintiff's and

defendants' businesses leaves no doubt about it.  In addition, there is no dispute that defendants

have failed to pay anything due under the invoices, and plaintiff has preserved any right it has to

a PACA trust by providing appropriate notice on each invoice.

As to the second element identified above, I conclude that defendants' businesses are

covered under PACA because each qualifies as a "commission merchant, dealer, or broker"

pursuant to Section 499(a).  Defendants claim that they do not fall within this definition because

they are retail sellers, not wholesale sellers.  However, retail sellers, subject to an exemption not

applicable here, are considered "dealers."  This is because the statute defines "dealers," in

relevant part, as:

> [A]ny person engaged in the business of buying *or* selling in wholesale or jobbing
> quantities, as defined by the Secretary, any perishable agricultural commodity in
> interstate or foreign commerce, except that . . . no person buying any such
> commodity solely for sale at retail shall be considered as a "dealer" until the
> invoice cost of his purchases of perishable agricultural commodities in any
> calendar year are in excess of $230,000.

7 U.S.C. § 499a(b)(6)(B) (emphasis added).  In addition, the applicable regulations define

"wholesale or jobbing quantities" as receiving produce "totaling one ton (2,000 pounds) or more

in weight in any day shipped, received, or contracted to be shipped or received."  7 C.F.R.

§ 46.2(x).

The main problem with defendants' construction of the statute is that it changes "buying

or selling" to "buying and selling."  Defendants would thus have it cover only those merchants

who operate entirely in the wholesale end of the produce business.  But PACA is not that narrow.

Putting aside the reference to "jobbing" (because it has no application here), the "buying or

selling" reference covers two classes of produce merchants: (1) those who buy in wholesale

quantities and (2) those who sell in wholesale quantities.  Defendants are within the former.  That

is, in fact, why we are here – plaintiff, as a wholesale seller, is claiming PACA protection over

its sales to defendants, who are wholesale buyers.

This is made clear not only by the use of the disjunctive "or" instead of "and," but also by

the exemption for certain small retailer sellers that the statute – indeed, the same sentence –

provides.  If, as the statute provides, retailer sellers with less than $250,000 in purchases in any

given year are exempt, then it follows that retailers with over $250,000 in purchases are not

exempt.[1]  As one commentator has noted, "A dealer is not otherwise exempted from PACA just because it resells produce at retail, so long as its annual purchases of produce exceed $230,000." David R. Seligman, Better Scarf it Down: The Third Circuit Applies PACA to Restaurants, 19-May Am. Bankr. Inst. J. 24, 24 (2000), available at https://www.abi.org/abi-journal/better-scarf-it-down-the-third-circuit-applies-paca-to-restaurants; see also In re Magic Restaurants, Inc., 205 F.3d 108, 117 (3d Cir. 2000) (restaurants that buy produce in wholesale or jobbing quantities and have gross purchases of produce of more than $230,000 in any one year are subject to PACA); Amendments to the Perishable Agricultural Commodities Act (PACA), 62 Fed. Reg. 15,083, 15,083 (March 31, 1997) (amending 7 C.F.R. § 46) ("PACA establishes a code of fair trading practices covering the marketing of fresh and frozen fruits and vegetables in interstate and foreign commerce" and "protects growers, shippers, distributors, *and retailers* dealing in those commodities" (emphasis added)).

This also makes basic business sense.  After all, what is the retail business?  It is almost always the purchase of a large quantity of goods at a wholesale price and then selling it in smaller quantities at a higher per item price to the consuming public in the hope that total sales will exceed the wholesale price plus the cost of sales.  Cf. Apple Inc. v. Pepper, 139 S. Ct. 1514, 1522 (2019) (describing a "markup pricing model").  Defendants' construction of the statute to

---

[1] Defendants do not and cannot contend that they have never purchased $230,000 or more of produce in a calendar year or that their businesses do not satisfy the "wholesale quantity" requirement.  First, plaintiff's complaint expressly alleges these facts, and because of defendants' default, those factual allegations are deemed true.  See, e.g., Maspeth Trading Inc. v. New A & N Food Mkt., Inc., No. 13-cv-6454, 2014 WL 3762694, at *3 (E.D.N.Y. June 10, 2014), report and recommendation adopted, 2014 WL 3762965 (E.D.N.Y. July 30, 2014).  In any event, although defendants vaguely assert that their stores "are not designed to sell and store large commercial quantities of perishable goods which is necessary to establish trade in interstate or foreign commerce," nothing in the motion to dismiss contradicts the complaint's allegations as to how much produce they purchase and receive.

exclude all retailers would virtually eliminate the use of PACA to protect wholesale produce merchants and brokers like plaintiff from buyers like defendants who fail to pay.[2]

For similar reasons, plaintiff has satisfied the third factor – that the transaction occurred in interstate commerce.  Plaintiff has submitted evidence that it purchased the produce in question from Pennsylvania growers or merchants for resale in New York.  This satisfies the broad standard for an interstate commerce connection under PACA.

Defendants again advance a crabbed interpretation of the statute, arguing that since they are New York residents who bought produce from another New York resident, and sold the produce to yet other New York residents, there is no interstate commerce involved.  But the statute does not look at merely defendants' end of the transaction.  It looks at the pathway of the produce.  The interstate commerce requirement is satisfied if the transaction "is part of that current of commerce usual in the trade in that commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another."  7 U.S.C. § 499a(b)(8).  A number of courts have construed

---

[2] The court in Abraham Produce Corp. v. MBS Bros. Inc., No. 19-cv-2638, 2020 WL 1329362 (E.D.N.Y. March 23, 2020), reached a somewhat contrary result.  There, the court denied the plaintiff's motion for default judgment and dismissed the case for lack of subject matter jurisdiction because the plaintiff failed to submit evidence that the defaulting defendant had received $230,000 in produce in a calendar year and 2,000 pounds of produce in a single day.  Abraham is distinguishable from the instant case because the complaint there did not allege satisfaction of the purchase and weight requirements of the statute.  In contrast, as noted above, the complaint here made those allegations, and they are deemed true by reason of defendants' default.

Aside from this distinction, I respectfully disagree with the Abraham court's conclusion for several reasons.  First, if a purchaser is exempt from coverage because of insufficient annual purchases or daily weight of produce purchased, those are affirmative defenses that the purchaser must assert and, therefore, in a default situation, it has waived them.  Second, although the Abraham court, like defendants here, viewed the failure to satisfy the quantity and weight requirements as depriving the court of subject matter jurisdiction, the more modern authorities strongly suggest that the failure to meet the elements of a federal statute, or falling within exemptions to that statute, do not go to the court's subject matter jurisdiction but the plaintiff's failure to state a claim.  See Arbaugh v. Y&H Corp., 546 U.S. 500, 511–14 (2006).  Finally, I think courts depart from their proper role when they act as advocates for a defaulting defendant on an issue other than lack of subject matter jurisdiction, frivolity, or, at least, manifest failure to state a claim.  See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) (Korman, J., concurring in part and dissenting in part) ("There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case.").

this *de minimis* standard as embodying the full extent of Congress's power under the interstate commerce clause.  See, e.g., In re Southland + Keystone, 132 B.R. 632, 640 (B.A.P. 9th Cir. 1991) (PACA's interstate commerce requirement "is essentially consistent with the broad definitions of interstate commerce developed by the Supreme Court.").  Thus, in The Produce Place v. Dep't of Agriculture, 91 F.3d 173 (D.C. Cir. 1996), the Court of Appeals explained:

> [T]he current of interstate commerce should be thought of as akin to a great river that may be used for both interstate and intrastate shipping; imagine a little raft put into the Mississippi River at Hannibal, Mo., among the big barges bound for Memphis, New Orleans and ports beyond, with St. Louis as the rafter's modest destination.  On this view, a shipment of strawberries can enter the current of interstate commerce even if the berries are reserved exclusively for sale and consumption within the state where they were grown.

Id. at 175–76; see also Fishgold v. OnBank & Tr. Co., 43 F. Supp. 2d 346, 349 (W.D.N.Y. 1999) (PACA's interstate commerce requirement has been liberally interpreted); W. J. Westcott Co. v. Yonk Rubin & Son, 122 F. Supp. 888, 892 (E.D. Pa. 1954) (Pennsylvania produce seller could sue Pennsylvania buyer under PACA because the buyer instructed the dealer to deliver the produce to a New York third party).  Therefore, the Pennsylvania origin of the produce at issue in this case is more than sufficient to satisfy the interstate commerce nexus under PACA.

Having rejected defendants' statutory arguments, I note that there is no other opposition to plaintiff's motion for default judgment.  It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true.  See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  In the instant case, the complaint's allegations are sufficient to establish liability.

## II.   Damages

It is well-settled that on a motion for a default judgment, a defendant's default does not constitute an admission as to the damages claimed in the complaint.  See, e.g., id.  The burden is on plaintiff to establish, by a reasonable certainty, his entitlement to the relief requested.  See

Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). To determine

damages, the court may conduct an inquest, see Fed. R. Civ. P. 55(b)(2)(B), or it may rely on the

affidavits and other documentary evidence provided by plaintiff, obviating the need for a hearing

on damages, see Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr.,

LLC, 779 F.3d 182, 189 (2d Cir. 2015).

There is no need for an inquest here. Plaintiff has provided invoices and other documents

that establish the unpaid amounts, and defendants do not contest plaintiff's evidence on damages.

See Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d 260, 272 (E.D.N.Y.

2019). This evidence shows that defendants are liable as follows:

First, the invoices and other documents show that IQF has failed to pay for produce in the

amount of $26,180. Because plaintiff has adequately pleaded that Maman controlled IQF during

the relevant period, he and IQF are jointly and severally liable as to these damages. See, e.g., G

& P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc., No. 15-cv-6174, 2016 WL 5802747,

at *5 (E.D.N.Y. Aug. 12, 2016), report and recommendation adopted, 2016 WL 5716819

(E.D.N.Y. Sept. 30, 2016).

Second, the invoices and other documents show that H&A has failed to pay for produce

in the amount of $63,071. Because plaintiff has adequately pleaded that both Maman and

Mamayev controlled H&A during the relevant period, I conclude that H&A, Maman, and

Mamayev are jointly and severally liable as to these damages. See id.

Plaintiff also seeks prejudgment interest. For a PACA claim, "[t]he decision whether to

grant prejudgment interest and the rate used if such interest is granted are matters confided to the

district court's broad discretion." Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d

1063, 1071 (2d Cir. 1995). Here, plaintiff requests that the Court apply a nine percent interest

rate, presumably based on the New York statutory rate.  See id. (upholding a district court's decision to award a lesser rate).  I will award prejudgment interest at a nine percent rate from the midpoint of the transactions as to each corporate defendant:

| Defendants | Principal | Dates of Unpaid Shipments | Midpoint | Accrued Time | Calculation | Interest |
|---|---|---|---|---|---|---|
| IQF & Maman | $26,180 | Mar. 18, 2017 to Oct. 31, 2018 | Jan. 8, 2018 | 1,141 days | 26,180 * .09 * (1,141/365) | $7,365.55 |
| H&A, Maman, & Mamayev | $63,071 | Oct. 19, 2018 to Dec. 18, 2018 | Nov. 24, 2018 | 821 days | 63,071 * .09 * (821/365) | $12,767.59 |

Finally, plaintiff asks me to award attorneys' fees and costs.  "Attorneys fees are not available under the PACA statute where a contractual basis for the fees is lacking."  E. Armata, Inc. v. Platinum Funding Corp., 887 F. Supp. 590, 594 (S.D.N.Y. 1995).  Because plaintiff's invoices do not mention attorneys' fees, plaintiff cannot recover those fees.  See Mikey's Choice LLC v. Fagos LLC, No. 08-cv-4492, 2010 WL 935550, at *4 (E.D.N.Y. Feb. 19, 2010), report and recommendation adopted, 2010 WL 934260 (E.D.N.Y. March 12, 2010).  In any event, plaintiff's counsel did not disclose the hours expended or the rate charged, as an award of attorneys' fees requires.  See S. Katzman Produce, Inc. v. Won, No. 08-cv-2403, 2009 WL 2448408, at *6 (E.D.N.Y. Aug. 7, 2009).

Although the invoices do not mention costs, several courts in this Circuit have concluded that, on a motion for default judgment in a PACA case, "Federal Rule of Civil Procedure 54(d)(1) permits the prevailing party to receive its costs even if it is not eligible to receive its attorney's fees."  Poppy's Wholesale Produce Inc. v. S & S Grocery of N.Y. Corp., No. 11-cv-4337, 2012 WL 2373629, at *1 (E.D.N.Y. June 22, 2012); see also G & P Warehouse, 2016 WL 5802747, at *12.  The prevailing party may "receive its costs for the items listed in Local Civil Rule 54.1," including the filing fee.  G & P Warehouse, 2016 WL 5802747, at *12.  Here,

plaintiff has sought only the filing fee.  All defendants shall be jointly and severally liable for

this fee.  See id. at *13.

Therefore, the total damages awards are as follows:

- IQF and Maman are jointly and severally liable for $26,180 in unpaid produce and $7,365.55 in prejudgment interest, for a total of $33,545.55.

- H&A, Maman, and Mamayev are jointly and severally liable for $63,071 in unpaid produce and $12,767.59 in prejudgment interest, for a total of $75,838.59.

- IQF, H&A, Maman, and Mamayev are jointly and severally liable for $400, representing the filing fee.

### CONCLUSION

Defendants' motion to dismiss [22] is denied.  Plaintiff's motion for a default judgment

[17] is granted.  The Clerk is directed to enter judgment against IQF and Maman in the amount

of $33,545.55; against H&A, Maman, and Mamayev in the amount of $75,838.59; and against

IQF, H&A, Maman, and Mamayev in the amount of $400.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
   February 22, 2021